## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| PHYLLIS ELLIS, as Administrator of the Estate of Terrance Jenkins, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| RANDY PFISTER; JAMES BOLAND; OFFICER DEAL; OFFICER BUFFORD; MARVIN REED; UNKNOWN PONTIAC ASSISTANT WARDEN OF OPERATIONS; UNKNOWN ILLINOIS DEPARTMENT OF CORRECTIONS EMPLOYEES, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, Phyllis Ellis, as Administrator of the Estate of Terrance Jenkins, by and through her attorneys, Loevy & Loevy, complains of Defendants Randy Pfister, James Boland, Officer Deal, Officer Bufford, Marvin Reed, Unknown Assistant Warden of Operations at Pontiac Correctional Center, and Unknown Illinois Department of Corrections Employees, and states as follows:

### Introduction

1.     On October 4, 2015 at the Pontiac Correctional Center, Defendants Boland, Deal, and Bufford beat Terrance Jenkins to death while his arms and legs were retrained in cuffs, and suffocated him by shoving a piece of paper down his throat.

2.     Mr. Jenkins's death was not the first incident of unjustified and unconstitutional violence by correctional officers at Pontiac Correctional Center, nor

was it the first incident of excessive force by Defendants Boland, Deal, and/or Bufford in particular.  Prior to Mr. Jenkins's death, incidents of excessive force and violence at Pontiac by correctional officers were commonplace.  Despite knowledge of this pattern of violence, Defendant Pfister (the Warden at Pontiac), Defendant Reed (an Assistant Warden), and the Unknown Assistant Warden of Operations at Pontiac Correctional Center failed to take any adequate action to prevent incidents of excessive force, like that used against Mr. Jenkins, from occurring.

### Jurisdiction and Venue

3.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

4.      Venue is proper under 28 U.S.C. § 1391(b).  Defendant Randy Pfister resides in this judicial district.

### Parties

5.      Terrance Jenkins, the decedent, was a 56-year-old prisoner housed at Pontiac Correctional Center (Pontiac).  Phyllis Ellis is Mr. Jenkins's ex-wife, and has been duly appointed as administrator of Mr. Jenkins's estate.

6.      At all times relevant to his involvement in this case, Defendant James Boland was a correctional lieutenant at Pontiac and an employee of the Illinois Department of Corrections (IDOC).  Defendant Boland is sued here in his individual capacity.  At all times relevant to the events at issue in this case, Defendant Boland was acting under color of law and within the scope of his employment.

7.     At all times relevant to his involvement in this case, Defendant Officer Deal was a correctional officer at Pontiac and an employee of the IDOC.  Defendant Deal is sued here in his individual capacity.  At all times relevant to the events at issue in this case, Defendant Deal was acting under color of law and within the scope of his employment.

8.     At all times relevant to his involvement in this case, Defendant Officer Bufford was a correctional officer at Pontiac and an employee of the IDOC. Defendant Bufford is sued here in his individual capacity.  At all times relevant to the events at issue in this case, Defendant Bufford was acting under color of law and within the scope of his employment.

9.     At all times relevant to his involvement in this case, Defendant Randy Pfister was the Warden at Pontiac and an employee of the IDOC.  Defendant Pfister was responsible for the implementation, oversight, and supervision of policies and practices at Pontiac, and the oversight and discipline of staff there.  Defendant Pfister is sued here in his individual capacity.  At all times relevant to the events at issue in this case, Defendant Pfister was acting under color of law and within the scope of his employment.

10.     At all times relevant to his involvement in this case, Defendant Marvin Reed was the Assistant Warden of Operations at Pontiac and an employee of the IDOC.  Defendant Reed was responsible for the implementation, oversight, and supervision of policies and practices at Pontiac, and the oversight and discipline of staff there.  Defendant Reed is sued here in his individual capacity.  At all times

relevant to the events at issue in this case, Defendant Reed was acting under color of law and within the scope of his employment.

11.      Defendant Unknown Pontiac Assistant Warden of Operations was the Assistant Warden of Operations at Pontiac immediately before Defendant Reed took over the position.  At all times relevant to his or her involvement in this case, Defendant Unknown Pontiac Assistant Warden of Operations was an employee of the IDOC.  During his or her tenure at Pontiac, Defendant Unknown Pontiac Assistant Warden of Operations was responsible for the implementation, oversight, and supervision of policies and practices at Pontiac, and the oversight and discipline of correctional staff there.  Defendant Unknown Pontiac Assistant Warden of Operations is sued here in his or her individual capacity.  At all times relevant to the events at issue in this case, Defendant Unknown Pontiac Assistant Warden of Operations was acting under color of law and within the scope or his or her employment.

## Allegations

12.      In early October 2015, Mr. Jenkins was being housed in the protective custody unit of Pontiac.  He was 56 years old.

13.      Mr. Jenkins was an avid card and dominoes player.  He frequently could be found in the recreation area playing dominoes with the other prisoners in their 50s in his housing unit.

14.     Mr. Jenkins also had glaucoma and was receiving ongoing medical treatment at Pontiac for it.  Because of his glaucoma, Mr. Jenkins had excessive eye drainage.

15.     On October 4, 2015, Mr. Jenkins left his housing unit to go to the outdoor recreation area for prisoners in protective custody.  Defendants Boland, Deal, and Bufford were monitoring prisoners in the area immediately inside of the recreation yard.

16.     During a pat down search of Mr. Jenkins, either Defendant Deal or Bufford noted that Mr. Jenkins had a small amount of toilet paper in his breast pocket.  The officer told Mr. Jenkins that he was going to take his "yard time" away based on his belief that Mr. Jenkins could not bring the toilet paper with him.  Mr. Jenkins told the officer that he needed the toilet paper because of his glaucoma and excessive eye drainage.

17.     Defendant Deal or Bufford cursed at Mr. Jenkins and yelled at him to "cuff the fuck up," or words to that effect.  Mr. Jenkins continued to try to explain that he needed the tissue paper for medical reasons.

18.     Defendant Bolden then approached Mr. Jenkins and sprayed him with mace.  Defendants Bolden, Bufford, and Deal attacked Mr. Jenkins, beating him and dragging him away from the area.  At one point, Defendants slammed Mr. Jenkins against the floor, causing him to scream out in pain that they were breaking his arm.  Defendants restrained Mr. Jenkins with handcuffs and leg irons, and led him into a room out of the view of the other prisoners.

19.     Despite the fact that he was totally immobilized, Defendants then viciously attacked Mr. Jenkins, beating him about the face, head, neck, back, wrists, ankles, and knee.  Defendants then shoved a piece of paper (perhaps the same toilet paper that triggered the beating) so far down Mr. Jenkins's throat that he suffocated.  They then smothered him with their weight, causing him to asphyxiate.

20.     The forensic pathologist who conducted Mr. Jenkins's autopsy concluded that he died as a result of "restraint asphyxia and airway occlusion by a foreign object."  The autopsy further noted that the restraint asphyxia that caused his death consisted of weight applied on Mr. Jenkins while in a prone position with "restricted movement of his arms and legs."

21.     This was not the first instance of excessive force by Defendants Bolden, Deal, and/or Bufford.  For example, approximately one week before they killed Mr. Jenkins, Defendants Deal and Bufford beat another prisoner at Pontiac.

22.     When correctional officers use force, IDOC policy requires those officers to write reports documenting the circumstances surrounding that use of force.  On information and belief, Defendants Pfister, Reed, and Unknown Pontiac Assistant Warden of Operations reviewed these reports, as well as grievances that may have been written complaining about the prior instances of excessive force.

23.     Despite their awareness of the issue, Defendants Pfister, Reed, and Unknown Pontiac Assistant Warden of Operations failed to provide appropriate supervision, discipline, or training, or to take any action to prevent the repeated instances of excessive force by Defendants Bolden, Deal, and/or Bufford.

24.     Moreover, the unjustified attack on Mr. Jenkins by Defendants Bolden, Deal, and Bufford is not an isolated incident at Pontiac.  To the contrary, unjustified violence against prisoners at the prison is a common occurrence.  Yet despite this widespread culture of violence, Defendants Pfister, Reed, and Unknown Pontiac Assistant Warden of Operations failed to take any meaningful action to prevent prisoners like Mr. Jenkins from being harmed by officers charged with protecting them.

**COUNT I**
**42 U.S.C. § 1983 – Excessive Force (Eighth Amendment)**
**Defendants Boland, Deal, and Bufford**

25.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

26.     As described more fully above, Defendants Boland, Deal, and Bufford used force against Mr. Jenkins, thereby causing his death.  That use of force was unreasonable in light of the facts and circumstances present at the time that the force was used.

27.     In using force against Mr. Jenkins, Defendants Boland, Deal, and Bufford intentionally used extreme or excessive cruelty toward him for the very purpose of causing him harm, and not in a good faith effort to maintain or restore security or discipline.

28.     Alternatively, Defendants Boland, Deal, and Bufford knew that using force presented a risk of harm to Mr. Jenkins, but they recklessly disregarded that

risk and Mr. Jenkins's safety by failing to take reasonable measures to minimize that risk of harm.

29.   As a result of the unjustified and unconstitutional conduct of Defendants Boland, Deal, and Bufford, Mr. Jenkins experienced pain, suffering, emotional distress, injury, and ultimately death.

## COUNT II
### 42 U.S.C. § 1983 – Failure to Intervene (Eighth Amendment)
### All Defendants

30.   Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

31.   As described more fully above, Defendants Boland, Deal, Bufford, Pfister, Reed, and Unknown Pontiac Assistant Warden of Operations each had a reasonable opportunity to prevent the violation of Mr. Jenkins's constitutional rights as set forth above had they been so inclined, but failed to do so.

32.   Defendants knew of a substantial risk of harm to Mr. Jenkins's safety, but consciously disregarded that risk by failing to take reasonable steps to prevent the harm from occurring.

33.   Defendants' failures to act were intentional, done with malice, and/or done with deliberate indifference to Mr. Jenkins's rights.

34.   As a result of Defendants' unconstitutional failure to intervene, Mr. Jenkins experienced pain, suffering, emotional distress, injury, and ultimately death.

35.     Mr. Jenkins's injuries were proximately caused by the policies and practices of Defendants Pfister, Reed, and Unknown Pontiac Assistant Warden of Operations.

36.     Prior to October 2015, Defendants Pfister, Reed, and Unknown Pontiac Assistant Warden of Operations had notice that Defendants Boland, Deal, and/or Bufford were using excessive force against prisoners at Pontiac.  Despite this knowledge, Defendants Pfister, Reed, and Unknown Pontiac Assistant Warden of Operations failed to adequately supervise, discipline, or train them, or take any other reasonable measures to prevent them from using excessive force against Mr. Jenkins.

37.     Similarly, prior to October 2015, Defendants Pfister, Reed, and Unknown Pontiac Assistant Warden of Operations had notice that correctional staff at Pontiac were routinely using excessive force against prisoners housed there.  This routine use of excessive force was widespread and pervasive.  Despite knowledge of this unconstitutional use of force, Defendants Pfister, Reed, and Unknown Pontiac Assistant Warden of Operations failed to adequately supervise, discipline, or train correctional staff, or take any other reasonable measures to prevent officers like Defendants Boland, Deal, or Bufford from using excessive force against Mr. Jenkins.

38.     At all times relevant to their involvement in this case, Defendants Pfister, Reed, and Unknown Pontiac Assistant Warden of Operations were responsible for the creation, implementation, oversight, and supervision of policies,

9

practices, and procedures regarding use of force at Pontiac; the training of correctional staff at Pontiac on use of force; and the supervision and discipline of correctional staff at Pontiac.

39.     The above-described widespread use of excessive force at Pontiac, so pervasive as to constitute de facto policy at Pontiac, was able to exist and thrive because Defendants Pfister, Reed, and Unknown Pontiac Assistant Warden of Operations were deliberately indifferent to the problem, thereby effectively ratifying it.

40.     Mr. Jenkins's injuries were caused by employees of IDOC, including but not limited to Defendants Boland, Deal, and Bufford, who acted pursuant to the de facto policies at Pontiac, described above, that were ratified by Defendants Pfister, Reed, and Unknown Pontiac Assistant Warden of Operations.

## COUNT III
### 42 U.S.C. § 1983 – Conspiracy
### All Defendants

41.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

42.     Defendants reached an agreement among themselves to deprive Mr. Jenkins of his constitutional rights and to protect one another from liability for depriving Mr. Jenkins of his rights, all as described in the various paragraphs of this Complaint.

43.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

44.     The misconduct described in this Count was undertaken intentionally, with malice, and/or with reckless indifference to Mr. Jenkins's rights.

45.     As a direct and proximate result of the illicit prior agreement referenced above, Mr. Jenkins's rights were violated and he suffered injuries, including pain, suffering, emotional distress, and ultimately death.

46.     Mr. Jenkins's injuries were caused by employees of IDOC, including but not limited to Defendants Boland, Deal, and Bufford, who acted pursuant to the de facto policies at Pontiac, described above, that were ratified by Defendants Pfister, Reed, and Unknown Pontiac Assistant Warden of Operations.

**COUNT IV**
**755 ILCS 5/27-6 (Survival Act) – Intentional Infliction of Emotional Distress**
**Defendants Boland, Deal, and Bufford**

47.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

48.     In the manner described more fully above, by beating Mr. Jenkins to death without reasonable justification and suffocating him, Defendants Boland, Deal, and Bufford engaged in extreme and outrageous conduct.

49.     Defendants' actions as set forth above were rooted in an abuse of power or authority.

50.     Defendants' actions as set forth above were undertaken intentionally or with knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

11

51.     Defendants' actions, as set forth above, were undertaken intentionally, with malice, and/or with reckless indifference to Mr. Jenkins's rights.

52.     As a direct and proximate result of Defendants' misconduct, Mr. Jenkins suffered injuries, including severe emotional distress and great conscious pain and suffering prior to his death.

53.     Mr. Jenkins filed no action during his lifetime, but under the laws of the State of Illinois, this action survives and may be asserted by his Estate.

54.     Plaintiff Phyllis Ellis, in her capacity as Administrator of the Estate of Terrance Jenkins, claims damages for the conscious pain and suffering of Terrance Jenkins, pursuant to 755 ILCS 5/27-6, commonly referred to as the Illinois Survival Act.

## COUNT V
### 755 ILCS 5/27-6 (Survival Act) – Battery
### Defendants Boland, Deal, and Bufford

55.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

56.     As described more fully above, Defendants Boland, Deal, and Bufford intentionally made physical contact with Mr. Jenkins without valid cause.  That physical contact was offensive and harmful.

57.     Defendants committed these acts intentionally, willfully, and wantonly.

58.     The misconduct described in this Count was undertaken with intentional disregard of Mr. Jenkins's rights.

12

59.     As a direct and proximate result of Defendants' misconduct, Mr. Jenkins suffered great conscious pain and suffering prior to his death.

60.     Mr. Jenkins filed no action during his lifetime, but under the laws of the State of Illinois, this action survives and may be asserted by his Estate.

61.     Plaintiff Phyllis Ellis, in her capacity as Administrator of the Estate of Terrance Jenkins, claims damages for the conscious pain and suffering of Terrance Jenkins, pursuant to 755 ILCS 5/27-6, commonly referred to as the Illinois Survival Act.

## COUNT VI
### 755 ILCS 5/27-6 (Survival Act) – Negligent or Willful and Wanton Conduct
### All Defendants

62.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

63.     In the manner described more fully above, the actions of Defendants breached the duty of care owed to detainees in their care.  They did so by using excessive force against Mr. Jenkins and/or failing to intervene to prevent the use of excessive force against Mr. Jenkins.

64.     Alternatively, the actions of Defendants were willful and wanton in that they demonstrated an utter indifference to the safety of others. Defendants were aware that an injury would probably result from their actions or failures to act and recklessly disregarded the consequences of those actions or failures to act.

65.     The misconduct described in this Count was undertaken with intentional disregard of Mr. Jenkins's rights.

66.     As a direct and proximate result of Defendants' negligence and/or willful and wanton conduct, Mr. Jenkins suffered great conscious pain and suffering prior to his death.

67.     Mr. Jenkins filed no action during his lifetime, but under the laws of the State of Illinois, this action survives and may be asserted by his Estate.

68.     Plaintiff Phyllis Ellis, in her capacity as Administrator of the Estate of Terrance Jenkins, claims damages for the conscious pain and suffering of Terrance Jenkins, pursuant to 755 ILCS 5/27-6, commonly referred to as the Illinois Survival Act.

## COUNT VII
### 740 ILCS 180/1 (Wrongful Death) – Battery
### Defendants Boland, Deal, and Bufford

69.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

70.     As described more fully above, Defendants Boland, Deal, and Bufford intentionally made physical contact with Mr. Jenkins without valid cause.  That physical contact was offensive and harmful.

71.     Defendants committed these acts intentionally, willfully, and wantonly.

72.     The misconduct described in this Count was undertaken with intentional disregard of Mr. Jenkins's rights.

73.     As a direct and proximate result of Defendants' misconduct, Mr. Jenkins suffered injuries, including death.

14

74.     Plaintiff Phyllis Ellis, on behalf of the next-of-kin (including Mr. Jenkins's son, Terrance Jenkins, Jr.) claims damages for the wrongful death of Mr. Jenkins, and for their loss of his services, protection, care, future income, assistance, society, companionship, comfort, guidance, counsel, and advice, as well as for their mental anguish caused by this loss, and for cremation and other expenses and damages pursuant to 740 ILCS 180/1, commonly referred to as the Illinois Wrongful Death Act.

**COUNT VIII**
**740 ILCS 180/1 (Wrongful Death) – Negligent or Willful and Wanton Conduct**
**All Defendants**

75.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

76.     In the manner described more fully above, the actions of Defendants breached the duty of care owed to prisoners in their care.  They did so by using excessive force against Mr. Jenkins and/or failing to intervene to prevent the use of excessive force against Mr. Jenkins.

77.     Alternatively, the actions of Defendants were willful and wanton in that they demonstrated an utter indifference to the safety of others.  Defendants were aware that an injury would probably result from their actions or failures to act and recklessly disregarded the consequences of those actions or failures to act.

78.     As a direct and proximate result of Defendants' negligence and/or willful and wanton conduct, Mr. Jenkins suffered injuries, including death.

79.     Plaintiff Phyllis Ellis, on behalf of the next-of-kin (including Mr. Jenkins's son, Terrance Jenkins, Jr.) claims damages for the wrongful death of Mr. Jenkins, and for their loss of his services, protection, care, future income, assistance, society, companionship, comfort, guidance, counsel, and advice, as well as for their mental anguish caused by this loss, and for cremation and other expenses and damages pursuant to 740 ILCS 180/1, commonly referred to as the Illinois Wrongful Death Act.

Wherefore, Plaintiff Phyllis Ellis, as Administrator of the Estate of Terrance Jenkins, respectfully requests that this Court enter a judgment in her favor and against Defendants Randy Pfister, James Boland, Officer Deal, Officer Bufford, Marvin Reed, Unknown Pontiac Assistant Warden of Operations, and Unknown Illinois Department of Corrections Employees, awarding compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and appropriate.

# JURY DEMAND

Plaintiff Phyllis Ellis hereby demands a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all issues so triable.

Dated: October 3, 2016

Respectfully submitted,

/s/ Sarah Grady
Sarah Grady
Attorney for Plaintiff

Arthur Loevy
Jon Loevy
Sarah Grady
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900

17