IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| PHYLLIS ELLIS, as Administrator of the Estate of Terrance Jenkins, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 16 C 9449 |
| RANDY PFISTER, et al., | ) ) | |
| Defendants. | ) | Hon. Amy St. Eve |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO DISMISS AND MOTION TO TRANSFER VENUE**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..........................................................................................................1

FACTS ........................................................................................................................1

ARGUMENT ...............................................................................................................3

I.      Plaintiff Has Far Exceeded the Threshold Required to State a Claim for
Excessive Force ...............................................................................................3

II.     Plaintiff Has Adequately Pled a Claim for Failure to Intervene Against All
Defendants .......................................................................................................5

        A.     Plaintiff Has Adequately Pled a Claim for Failure to Intervene Against
Defendants Deal, Bufford, and Boland...................................................6

        B.     Plaintiff Has Adequately Pled a Claim for Failure to Intervene Against
Defendants Pfister and Reed ..................................................................8

III.    Plaintiff Has Plausibly Alleged A Conspiracy Claim Against All Defendants ................11

IV.   The Seventh Circuit Has Foreclosed Defendants' Sovereign Immunity Argument..........13

V.     Transfer Is Not Warranted In This Case ........................................................15

        A.     Venue in the Northern District of Illinois Is Proper ..............................15

        B.     Defendants Have Failed to Show Why Transfer Is Appropriate .........................16

                1.     Convenience of the Parties and Witnesses Counsels Against Transfer .....17

                2.     Defendants Have Waived Any Argument That the Interests of Justice
Favor Transfer and Even On Its Merits, the Interests of Justice
Counsel Against Transfer ........................................................19

CONCLUSION..............................................................................................................21

## **TABLE OF AUTHORITIES**

*ArlinGolf, LLC v. Village of Arlington Heights*, 631 F.3d 818 (7th Cir. 2011)................15, 20, 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................3

*Atkins v. Hasan*, No. 15 C 0203, 2015 WL 3862724 (N.D. Ill. June 22, 2015) ...........................14

*Backes v. Village of Peoria Heights*, 662 F.3d 866 (7th Cir. 2011) ........................................ 8, 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................7

*Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984) ........................................................ 12

*Billman v. Indiana Dep't of Corrs.*, 56 F.3d 785 (7th Cir. 1995) .............................................. 5

*Breiner v. City of Chicago*, No. 13 C 1696, 2014 WL 866419 (N.D. Ill. Mar. 4, 2014)...............12

*Brokaw v. Mercer County*, 235 F.3d 1000 (7th Cir. 2000).............................................................9

*Burks v. Raemich*, 555 F.3d 592 (7th Cir. 2009) ......................................................................5

*Calif. Serv. Emp. Health & Welfare Trust Fund v. Advance Bldg. Maintenance*,
     No. 10 C 3078, 2007 WL 4570629 (N.D. Cal. Dec. 26, 2007) .........................................16

*Chavez v. Illinois State Police*, 251 F.3d 612 (7th Cir. 2001) ...................................................5, 8

*Childress v. Walker*, 787 F.3d 433 (7th Cir. 2015)..................................................................... 7

*Coffey v. Van Dorn Iron Works*, 796 F.2d 217 (7th Cir. 1986) ...............................................16

*Crowder v. Lash*, 687 F.2d 996 (7th Cir. 1982)..........................................................................5

*Erickson v. Pardus*, 551 U.S. 89 (2007) ...............................................................................3, 5, 7

*Fields v. Wharrie*, 672 F.3d 505 (7th Cir. 2012) ..................................................................... 14

*Fillmore v. Page*, 358 F.3d 496 (7th Cir. 2004) ........................................................................5

*Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012) ....................................................3, 12

*Gentry v. Duckworth*, 65 F.2d 555 (7th Cir. 1995)................................................................... 8

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ..................................................................... 18

*Harper v. Albert*, 400 F.3d 1052 (7th Cir. 2005).........................................................................5

*Haywood v. Hathaway*, 842 F.3d 1026 (7th Cir. 2016)....................................................................11

*Healy v. Vaupel*, 549 N.E.2d 1240 (Ill. 1990) ...............................................................................14

*Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009)......................................................................3

*Hoffman-LaRoche, Inc. v. Greenberg,* 447 F.2d 872 (7th Cir. 1971)............................................12

*Hope v. Pelzer,* 536 U.S. 730 (2002) ................................................................................................4

*Hoskins v. Poelstra*, 320 F.3d 761 (7th Cir. 2003) ................................................................... 11, 12

*Humphries v. CBOCS West, Inc.*, 474 F.3d 387 (7th Cir. 2007) ............................................15, 20

*James v. Vill. of Willowbrook*, No. 11 C 9126, 2012 WL 3017889 (N.D. Ill. July 19, 2012).......12

*Johnson v. Vill. of Maywood*, No. 12 C 3014, 2012 WL 5862756 (N.D. Ill. Nov. 19, 2012) ........ 6

*Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1998) ....................................................... 8, 9, 11

*Kingsley v. Hendrickson*, 576 U.S. ___, 135 S. Ct. 2466 (2015)....................................................3

*Kitchen v. Burge*, 781 F. Supp. 2d 721 (N.D. Ill. 2011) ............................................................. 10

*KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718 (7th Cir. 2013) .............................16

*Koh v. Graf*, No. 11 C 2605, 2013 WL 5348326 (N.D. Ill. Sept. 24, 2013)................................. 6

*Lanigan v. Village of East Hazel Crest*, 110 F.3d 467 (7th Cir. 1997)...........................................8

*Leetaru v. Board of Trustees of University of Illinois*, 32 N.E.3d 583 (Ill. 2015)........................14

*Lewis v. Downey*, 581 F.3d 467 (7th Cir. 2009) ........................................................................... 5

*Murphy v. Smith*, 844 F.3d 653 (7th Cir. 2016) ......................................................................... 14

*Naducci v. Moore*, 572 F.3d 313 (7th Cir. 2009)........................................................................21

*Nat'l Presto Indus., Inc.*, 347 F.3d 662 (7th Cir. 2003)..............................................................17

*Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004)................................ 15

*Research Automation, Inc. v. Schrader-Bridgeport Inter'l, Inc.*, 626 F.3d 973
   (7th Cir. 2010)........................................................................................................................17

*Rodriguez v. Cook County*, 664 F.3d 627 (7th Cir. 2011) ............................................................14

*Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055 (N.D. Ill. 2015) ..........................................16

*Sanville v. McCaughtry*, 266 F.3d 724 (7th Cir. 2001) ...............................................................8

*Schultz v. Ill. Dep't of Corr.*, No. 00 C 4262, 2001 WL 1803713
    (S.D. Ill. Apr. 12, 2001) ...................................................................................................12

*Simonian v. Hunter Fan Co.*, No. 10 C 1212, 2010 WL 3975564
    (N.D. Ill. Oct. 7, 2010) ...................................................................................................16

*Smith v. Burge*, ___ F. Supp. 3d ___, No. 16 C 3404, 2016 WL 6948387
    (N.D. Ill. Nov. 28, 2016) ................................................................................................9

*Starks v. City of Waukegan,* 946 F. Supp. 3d 780 (N.D. Ill. 2013) ..............................................12

*Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) ................................................16

*Virnich v. Vorwald*, 664 F.3d 206 (7th Cir. 2011) ...............................................................3, 11

*Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002) ...............................................................11

*Warren ex rel. Warren v. Dart*, No. 09 C 3512, 2010 WL 4883923
    (N.D. Ill. Nov. 24, 2010) ................................................................................................6

*Werner v. Wall*, 836 F.3d 751 (7th Cir. 2016) ......................................................................9

*Whitley v. Albers,* 475 U.S. 312 (1986) ...........................................................................3, 4

*Woods v. Cook County*, No. 13 C 2607, 2014 WL 340422 (N.D. Ill. Jan. 30, 2014)...................14

## STATUTES

28 U.S.C. § 1367 ..........................................................................................................14

28 U.S.C. § 1391(b)(1) ...........................................................................................16, 21

28 U.S.C. § 1404 ........................................................................................................16

28 U.S.C. § 1404(a) .............................................................................................16, 21

Fed. R. Civ. P. 8(a) ..................................................................................................5, 6

## OTHER AUTHORITIES

Civil Justice Reform Act (CJRA) Text and Appendices, Mar. 2016,
    (last accessed Feb. 15, 2017) ............................................................... 20

CJRA Text and Appendices, Sept. 2015 (last accessed Feb. 15, 2017) .......................20

Ill. State Comm'n on Crim. Justice & Sentencing Reform, *Illinois Prison Overview*,
    (last accessed Feb. 15, 2017) ...........................................................................21

## INTRODUCTION

Plaintiff alleges that Terrance Jenkins was murdered by correctional staff at Pontiac Correctional Center in October 2015 because he carried a tissue with him to yard so that he could wipe his tearing eyes. The alleged facts are gruesome: the methodical beating of a man shackled by wrist and ankle, culminating in his death by suffocation, including forcing paper down his throat (perhaps the very same tissue that Plaintiff alleges caused Defendants to target Mr. Jenkins in the first place). Defendants have moved to dismiss the claims against them, arguing that perhaps their use of force was justified and in any event, Plaintiff's allegations are not clear enough. Their arguments are frivolous; no complaint of force could be more unjustified than that alleged here and, if true, every single person who participated in, encouraged, or failed to prevent Mr. Jenkins's death should be held liable in a court of law.

Defendants have also sought to transfer this case to a different forum, although they do not articulate why this Court should grant their request. This court is well-positioned to adjudicate this dispute and thus venue is proper here.

## FACTS

Plaintiff has alleged in her Complaint that on October 4, 2015, Mr. Jenkins, a 56-year-old prisoner in protective custody at Pontiac Correctional Center, was walking from his housing unit to the "yard" (a recreation area for prisoners), directly past where Defendants Boland, Deal, and Bufford—correctional officers at the prison—were monitoring prisoners. Complaint (Doc. No. 1) ¶ 15. One of the Defendants did a pat down search of Mr. Jenkins and noted that he had some tissue paper in his breast pocket. *Id.* ¶ 16. The Defendant immediately became hostile, telling Mr. Jenkins that he would take yard time away and cursing at Mr. Jenkins when he tried to explain that he needed the tissue for his eyes, which drained excessively due to his glaucoma. *Id.* ¶¶ 16–

17. Defendant Boland sprayed Mr. Jenkins with mace, and all three Defendants began beating Mr. Jenkins, slamming him to the ground and restraining him with handcuffs and leg irons. *Id.* ¶¶ 17–18. Despite the fact that Mr. Jenkins was now totally immobilized, Defendants led him into an isolated room and continued to attack him, beating him about the face, head, neck, back, wrists, ankles, and knees. *Id.* ¶¶ 18–19. They smothered Mr. Jenkins with their weight, causing him to asphyxiate. *Id.* ¶ 19. Defendants then shoved a piece of paper so far down Mr. Jenkins's throat that he suffocated. *Id.* ¶ 19.

After the event, Defendant Bufford asked Defendant Boland if he held back this time. Defendant Boland answered, "No, I don't hold back. I went full throttle."[1]

This was not Defendants' first experience with abusive and unconstitutionally excessive force. Approximately one week before Mr. Jenkins died, Defendants Bufford and Deal used excessive force against another prisoner at Pontiac. *Id.* ¶ 21. Defendants Deal, Bufford, and Boland have been the subject of a number of lawsuits and related grievances alleging excessive force.

Defendant Pfister, the Warden at Pontiac, and Defendant Reed, an Assistant Warden, knew about these prior complaints and prior instances of excessive force. *Id.* ¶¶ 22, 36–40. Additionally, they knew of a pervasive and widespread culture of violence at Pontiac Correctional Center, whereby correctional staff routinely used excessive force against prisoners there. *Id.* ¶¶ 35–40. Despite this knowledge, and despite their responsibility at the prison to train, supervise, and discipline correctional staff like Defendants Bufford, Deal, and Boland,

---

[1] To the extent that Plaintiff's response brief contains factual allegations that are more specific than those in her Complaint, she is permitted to do so as long as those statements are consistent with her Complaint. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (a party opposing dismissal has more flexibility than a party moving to dismiss, including the ability to "elaborate on [her] factual allegations so long as the new elaborations are consistent with the pleadings").

Defendants Pfister and Reed turned a blind eye to the problem, acting with deliberate indifference toward Mr. Jenkins and other prisoners like him. *Id.* ¶¶ 35–40.

## ARGUMENT

In assessing a motion to dismiss, the Court must "construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). To state a claim, a plaintiff's complaint need only make out a "plausible account" of his entitlement to relief. *Geinosky*, 675 F.3d at 749; *see also Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). The Supreme Court has held that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court in *Iqbal* further emphasized that applying the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## I.   Plaintiff Has Far Exceeded the Threshold Required to State a Claim for Excessive Force.

The Eighth Amendment prohibits the unnecessary and wanton infliction of pain, and protects prisoners from being subjected to excessive force. *Whitley v. Albers,* 475 U.S. 312, 327 (1986). Whether a use of force was unconstitutionally excessive hinges on whether the force was used in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.[2] *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citing *Whitley,* 475 U.S. at 320–321).

---

[2] Plaintiff assumes that in deciding Defendants' motion, this Court will apply the standard articulated by the Supreme Court in *Whitley* and *Hudson*. Yet it is not clear that this standard remains good law following the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. ___, 135 S. Ct. 2466, 2472–73 (2015), which held that excessive force claims brought by pretrial detainees are governed by an objective standard. *See id.* at 12476. Regardless, the Court need not reach this issue now because Plaintiff has clearly stated an excessive force claim even under the *Whitley* and *Hudson* standard.

3

When considering whether the force was malicious and sadistic, courts generally consider the need for force and the amount of force used, the extent of the injury caused by the force, the threat reasonably perceived by the officer, and efforts made to temper the severity of the force. *Id*. at 7. To plead an excessive force claim, Plaintiff need not allege an express intention to inflict unnecessary pain. *Whitley*, 475 U.S. at 319.

Plaintiff's allegations make out among the strongest of excessive force and failure-to-intervene claims. Plaintiff has alleged that Defendants murdered Mr. Jenkins after spraying him with mace, restraining him in handcuffs and leg irons, and beating him mercilessly. Complaint ¶¶ 1, 18–19. Defendants, who outnumbered Mr. Jenkins by at least 3 to 1, finally took Mr. Jenkins's life by shoving a piece of paper (likely the very piece of toilet paper that so infuriated the guards and triggered their attack) so far down his throat that he asphyxiated. *Id*. ¶ 19. Defendants Deal, Bufford, and Boland either directly delivered this abuse, or else stood by while Mr. Jenkins was tortured. *Id.* ¶¶ 16–19, 25–34. The sin that prompted his death sentence was daring to bring tissue paper to the yard to help deal with his glaucoma. The only reasonable inference from these allegations is that Defendants sadistically and maliciously killed Mr. Jenkins, or else stood by while their co-Defendants killed him. In either circumstance, Defendants violated the Constitution. *Hope v. Pelzer,* 536 U.S. 730, 738 (2002) (holding that subjecting a prisoner to a substantial risk of harm was unjustified and in violation of the Eighth Amendment when he was handcuffed, placed in leg irons, and removed from the location of disruption, eliminating any safety concerns).

Defendants offer an alternative inference: perhaps Defendants actually meant well. Motion (Doc. No. 30) at 11. Defendants do not argue that their proposed inference is the only possible one, but instead suggest that one of Plaintiff's allegations—that Mr. Jenkins did not

4

blindly follow Defendants' orders without offering vocal disagreement—support their inference

and "request" on that basis that the Court dismiss Plaintiff's excessive force claim. *Id.*

Defendants offer no legal support for their frivolous argument. Indeed, granting their motion to

dismiss would require this Court to ignore the pleading standards in the Federal Rules of Civil

Procedure and Supreme Court and Seventh Circuit precedents.

As discussed above, Plaintiff need only put in her Complaint a "short and plain

statement" that shows some entitlement to relief. Fed. R. Civ. P. 8(a); *see also Erickson v.*

*Pardus*, 551 U.S. at 93. Mental states—like malice and sadism—can be pleaded generally. *Burks*

*v. Raemich*, 555 F.3d 592, 594 (7th Cir. 2009). Defendants are entitled to dismissal only if a

plaintiff has failed to assert any right to relief based on her allegations and all reasonable

inferences therefrom. *Chavez v. Illinois State Police*, 251 F.3d 612, 648 (7th Cir. 2001). Plaintiff

has gone far beyond that threshold and accordingly, dismissal is improper.[3]

## II. Plaintiff Has Adequately Pled a Claim for Failure to Intervene Against All Defendants.

To state a claim for failure to intervene, Plaintiff must allege that Defendants had a

realistic opportunity to prevent the violation of Mr. Jenkins's constitutional rights through the

use of excessive force by one or more officers but failed to do so. *Harper v. Albert*, 400 F.3d

1052, 1064 (7th Cir. 2005); *see also Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009).

Defendants need not directly participate in the excessive force itself to be found liable. *Crowder*

*v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982).

---

[3] Defendants additionally argue that because Plaintiff could not determine without discovery whether Officer Adam Deal or Officer Jon Deal (both correctional officers at Pontiac) was responsible for Mr. Jenkins's murder, Plaintiff's allegations are insufficiently vague.  This argument is meritless, as the Seventh Circuit has repeatedly allowed plaintiff to proceed to discovery even where they could not identify a single defendant by name.  *See Billman v. Indiana Dep't of Corrs.*, 56 F.3d 785, 789 (7th Cir. 1995); *Fillmore v. Page*, 358 F.3d 496, 507–08 (7th Cir. 2004).  In any event, Plaintiff has since learned that Officer Adam Deal and Officer Christopher Bufford were the officers involved in killing Mr. Jenkins.

### A.    Plaintiff Has Adequately Pled a Claim for Failure to Intervene Against Defendants Deal, Bufford, and Boland.

Plaintiff has alleged that Defendants Deal, Bufford, and Boland either directly inflicted the abusive blows and murderous actions on Mr. Jenkins, or else stood by while the other Defendants or other correctional staff did. Defendants argue that Plaintiff's failure to intervene claim should be dismissed because Plaintiff did not precisely detail which Defendant inflicted which blows, and which Defendant instead stood by refusing to intervene to protect Mr. Jenkins's constitutional rights and save his life. Motion at 11. They next contend in conclusory fashion that Plaintiff has not "show[n] how Defendants personally could have prevented the alleged constitutional violations." *Id.* at 12. Defendants' argument again seeks to impose a higher burden on Plaintiff than is permitted by the pleadings rules and thus this argument must also be rejected.

"Rule 8(a) is not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific [defendant]." *Koh v. Graf*, No. 11 C 2605, 2013 WL 5348326, at *4 (N.D. Ill. Sept. 24, 2013); *see also Johnson v. Vill. of Maywood*, No. 12 C 3014, 2012 WL 5862756, at *2 (N.D. Ill. Nov. 19, 2012) (plaintiff was not required to specify which officer committed which bad act); *Warren ex rel. Warren v. Dart*, No. 09 C 3512, 2010 WL 4883923, at *7 (N.D. Ill. Nov. 24, 2010) (same). Plaintiff concedes that she does not yet know which of Defendants Deal, Bufford, and Boland instigated the violent attack, who struck the first blow, who placed handcuffs and leg irons on Mr. Jenkins, who struck each blow after Mr. Jenkins had been immobilized, who ultimately shoved the paper so far down Mr. Jenkins's throat that he choked to death, and who stood idly by while the other Defendants methodically killed Mr. Jenkins. But no such specificity is required. Instead, Plaintiff must only provide fair notice of the claim and the grounds upon

6

which it rests. *Childress v. Walker*, 787 F.3d 433 (7th Cir. 2015) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)); *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (complaints need only "lay out a plausible grievance" and "[k]nowledge and intent, in particular, need not be covered in detail."). Plaintiff has done more than enough.

Defendants' unexplained assertion that Plaintiff has not "show[n]"[4] their opportunity to intervene is similarly meritless. Based on the facts laid out in Plaintiff's Complaint, a number of reasonable inferences follow. First, the Defendants who did not inflict the first blow should have intervened to protect Mr. Jenkins's safety. When Mr. Jenkins was slammed against the floor, the Defendants who did not commit the misconduct should have intervened to ensure no further harm came to Mr. Jenkins. When Mr. Jenkins was then placed in handcuffs and leg irons and ominously taken to a different room out of sight of other prisoners, Defendants who did not actually force him there should have intervened to ensure he received the medical attention he was owed under the Eighth Amendment. When Defendants then continued to beat him, the Defendants who did not inflict the blows should have intervened at that point to save him. And when one of the Defendants shoved a piece of paper down his throat, the other Defendants should have done something—anything—to stop him from being murdered. Further, by alleging that these Defendants were all present, and that Mr. Jenkins's death occurred over a sustained period of time, each Defendant had sufficient opportunity to intervene.

Simply put, Plaintiff has provided more than enough factual allegations to support her claim that Defendants Deal, Bufford, and Boland failed to intervene to save Mr. Jenkins's life and prevent the violation of his constitutional rights. Any contention by Defendants to the contrary is meritless.

---

[4] To the extent Defendants' argument is intended to require Plaintiff to "show" Defendants' misconduct through evidence, it is obviously improper. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

**B.      Plaintiff Has Adequately Pled a Claim for Failure to Intervene Against Defendants Pfister and Reed.**

Defendants contend that Plaintiff's failure to intervene claim should be dismissed against Defendants Pfister and Reed as well. Defendants argue that Plaintiff has not adequately alleged that Defendants Pfister and Reed were personally involved in the violation of Mr. Jenkins's constitutional rights and therefore, she has not "show[n]" how Defendants Pfister and Reed had a reasonable opportunity to intervene. Motion at 7. This argument is meritless.

The Seventh Circuit has repeatedly held that section 1983 claims are cognizable against supervisors who, although they did not "participate[] directly in the deprivation" at issue, nevertheless acted with "deliberate, reckless indifference to the misconduct of subordinates." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (internal quotation marks omitted); *see also Backes v. Village of Peoria Heights*, 662 F.3d 866, 869–70 (7th Cir. 2011) (supervisors may be personally liable under section 1983 if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see"); *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001) (same); *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997) (same); *Jones v. City of Chicago*, 856 F.2d 985, 992–93 (7th Cir. 1988) (same); *Gentry v. Duckworth*, 65 F.2d 555, 561 (7th Cir. 1995) (same; rejecting prison superintendent's argument against personal liability).

In other words, contrary to Defendants' unsupported assertion, the "personal involvement" requirement of section 1983 does *not* require Plaintiff to allege that each Defendant was physically present when the constitutional deprivation occurred. *Childress*, 787 F.3d at 439–40 ("personal responsibility is not limited to those who participate in the offending act"). Instead, it requires Plaintiff to allege that Defendants knew about the misconduct that ultimately caused the constitutional deprivation and acted with deliberate indifference to that

8

conduct. *Jones*, 856 F.2d at 992–93 (supervisors must "act knowingly or with deliberate, reckless indifference"); *Backes*, 662 F.3d at 870 (supervisors may be liable if they "have notice of the unconstitutional conduct of their subordinates and fail to prevent a recurrence of such misconduct").

In *Childress*, the Seventh Circuit rejected the same argument advanced by Defendants in this case. 787 F.3d at 439–40. It held that for prison administrators "responsible for setting policy, liability will result from the institution of a policy that, when enforced, causes a constitutional deprivation." *Id.* at 440 (internal quotation marks omitted) (citing *Brokaw v. Mercer County*, 235 F.3d 1000, 1012 (7th Cir. 2000)). Because the plaintiff in *Childress* had alleged that the defendant-warden knew of the practice that caused his injury, and was aware of the risk of harm that the practice posed to prisoners like him, the Seventh Circuit found that the plaintiff had given the defendant-warden fair notice of his claims against the defendant and thus they should not have been dismissed. *Id.* at 440–41; *see also Werner v. Wall*, 836 F.3d 751, 761 n.26 (7th Cir. 2016) (plaintiff states claim against prison administrator when he alleges that administrator knew of a practice and knew that the practice caused some prisoners to have their constitutional rights violated, but "nevertheless did not alter, change, or otherwise intervene to prevent the harm").

In *Smith v. Burge*, ___ F. Supp. 3d ___, No. 16 C 3404, 2016 WL 6948387, at *10 (N.D. Ill. Nov. 28, 2016), this Court recently rejected the same argument that Defendants Pfister and Reed advance here. In *Smith*, a section 1983 wrongful conviction case, the plaintiff brought claims against the supervisors of the police officers who tortured him into falsely confessing. The plaintiff alleged that these supervisors knew of the officers' coercive tactics against other individuals, but failed to intervene to prevent them from continuing their misconduct, resulting in

the plaintiff's constitutional violations. *Id.* This Court found that the plaintiff had sufficiently alleged that the supervisory defendants "had knowledge of the systemic torture . . . but nevertheless condoned it or turned a blind eye to it." *Id.*; *see also Kitchen v. Burge*, 781 F. Supp. 2d 721, 736 (N.D. Ill. 2011) (discussing supervisory liability).

Plaintiff's allegations against Defendants Pfister and Reed are similar to those approved of by the Seventh Circuit in *Childress* and this Court in *Smith*. Plaintiff has alleged that prior to Mr. Jenkins's death, there was a widespread and pervasive practice of excessive force against prisoners at Pontiac Correctional Center by correctional staff. Complaint ¶¶ 2, 24, 37–39. Plaintiff has alleged that Defendants Pfister and Reed encouraged this practice, or at the very least turned a blind eye toward it. In any event, Plaintiff has alleged that despite knowledge of this practice and its unconstitutional risks, Defendants Pfister and Reed failed to train, discipline, or supervise correctional staff (or take any other reasonable measures) to prevent the excessive force from continuing, despite having responsibility to do so. *Id.* ¶¶ 24, 37–39. Plaintiff has further alleged that Defendants Pfister and Reed also knew about the practice of excessive force by Defendants Deal, Bufford, and Boland specifically, including a similar incident of excessive force by Defendants Deal and Bufford approximately one week earlier, and despite this knowledge and their responsibility to train, supervise, and discipline these three officers, did not intervene to prevent them from using excessive force against Mr. Jenkins. *Id.* ¶¶ 21–23, 36.

Plaintiff anticipates that the evidence uncovered during discovery will substantiate these claims. For example, the maxim at Pontiac—"in this family, no one fights alone"— speaks volumes about the culture of violence that exists. The maxim is scrawled over a large mural in the prison, sending a terrifying message to prisoners, and it is thus implausible that Defendants

Pfister and Reed were not aware of this culture of violence. In any event, at the pleading stage, the Court must take all reasonable inferences in Plaintiff's favor. *Virnich*, 664 F.3d at 212.

Thus, although it is true that prisoner administrators cannot be vicariously liable for the misconduct of their subordinates, Plaintiff has made no such allegations. Instead, she has brought claims against Defendants Pfister and Reed for their *own* misconduct. *Haywood v. Hathaway*, 842 F.3d 1026, 1034 (7th Cir. 2016). Plaintiff has adequately alleged that Defendants Pfister and Reed were deliberately indifferent when they failed to intervene to stop Defendants Deal, Bufford, and Boland from using excessive force against Mr. Jenkins despite the knowledge and ability to do so.

## III.   Plaintiff Has Plausibly Alleged A Conspiracy Claim Against All Defendants.

Defendants next argue that Plaintiff has not adequately pled a conspiracy claim against Defendants. These arguments are without merit and easily discounted when Plaintiff's Complaint is examined in its entirety.

At the pleading stage, a conspiracy claim is adequate if the parties, general purpose, and approximate date are identified to notify a defendant of what he has been charged with. *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002); *see Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003) (holding that conspiracy claims need not be pleaded with particularity). A conspiracy claim prevails if Plaintiff shows that Defendants voluntarily participated in a common venture, regardless of whether they agreed on the details of the conspiracy or knew who the other conspirators were. *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1998). A showing that Defendants understood and accepted the general objectives of the conspiracy scheme, either explicitly or implicitly agreed with them, and did their part to further them is sufficient. *Id*. The Seventh Circuit has acknowledged that "[r]arely in a conspiracy case will there be direct

11

evidence of an express agreement among all the conspirators to conspire." *Bell v. City of Milwaukee*, 746 F.2d 1205, 1256 (7th Cir. 1984); *see also Hoskins*, 320 F.3d at 764 ("conspirators rarely sign contracts"). Thus "[c]ircumstantial evidence may provide adequate proof of conspiracy." *Bell*, 746 F.2d at 1256 (quoting *Hoffman-LaRoche, Inc. v. Greenberg,* 447 F.2d 872, 875 (7th Cir. 1971)); *see also Geinosky*, 675 F.3d at 749 (stating that Plaintiffs need only allege a plausible account of conspiracy).

The Seventh Circuit has made clear that even if a complaint makes "only rather conclusory direct allegations," a conspiracy claim can survive. *Id.* In *Geinosky*, the court reviewed the plaintiff's complaint in its entirety, finding that the allegations of misconduct therein went "well beyond the required threshold" to support plaintiff's conspiracy allegations. *Id*. Courts in this District have similarly concluded that a complaint should be examined in its entirety when assessing a conspiracy claim, rather than particular allegations in isolation. *See*, *e.g.*, *Starks v. City of Waukegan, 946 F. Supp. 3d 780, 790 (N.D. Ill. 2013)* (noting that the court would accept all allegations which "allow[ed it] to draw the reasonable inference" of a conspiracy even where one allegation was, on its own, conclusory); *Breiner v. City of Chicago*, No. 13 C 1696, 2014 WL 866419, at *4 (N.D. Ill. Mar. 4, 2014) (denying motion to dismiss plaintiff's conspiracy claim based on totality of plaintiff's allegations); *James v. Vill. of Willowbrook*, No. 11 C 9126, 2012 WL 3017889, at *9 (N.D. Ill. July 19, 2012) (same); *see also Schultz v. Ill. Dep't of Corr.*, No. 00 C 4262, 2001 WL 1803713, at *1 (S.D. Ill. Apr. 12, 2001) (courts must examine complaint as a whole in assessing a motion to dismiss under Rule 12(b)(6).

Plaintiff has alleged that Defendants Deal, Bufford, and Boland reached an agreement on October 4, 2015 to deprive Mr. Jenkins of his constitutional rights and continued participating in

the conspiracy until at least the time of Mr. Jenkins' death to use excessive force against Mr.

Jenkins (Count I) and to fail to intervene to prevent each other from using excessive force against

him (Count II). Complaint ¶¶ 15-19, 41-46.

Plaintiff's Complaint also sufficiently alleges a pattern of misconduct and inaction to

plausibly conclude that a conspiracy existed among the Defendants. Plaintiff has alleged that

Defendants Boland, Deal, and Bufford (as well as other officers) used unconstitutional excessive

force on previous occasions, and that Defendants Pfister and Reed reviewed reports documenting

circumstances surrounding their use of force and failed to do anything to prevent repeated

occurrences. Complaint ¶¶ 21-24. It is plausible to infer from these allegations that Defendants

agreed to deprive Mr. Jenkins of his constitutional right to not be subjected to excessive force.

Indeed, it is implausible to suggest Defendants Boland, Deal, and Bufford each used excessive

force against Mr. Jenkins to the point of causing his death without any such agreement, or that

Defendants Pfister, Reed, and Unknown Defendants did not have such an agreement when they

are responsible for monitoring Pontiac prisoners' well-being. Accordingly, Defendants' motion

to dismiss Plaintiff's conspiracy claim should be denied.

## IV.     The Seventh Circuit Has Foreclosed Defendants' Sovereign Immunity Argument.

Defendants argue that they are entitled to state sovereign immunity and as such, all of

Plaintiff's state-law claims (Counts IV–VIII) should be dismissed. Defendants' position

contradicts Seventh Circuit and Illinois precedents, and as such, it must be rejected.

As an initial matter, it is not even clear what argument Defendants are advancing. They

begin their argument by asserting that this Court lacks subject-matter jurisdiction because Illinois

law requires claims against the State of Illinois to be brought in the Court of Claims. Motion at

13. Defendants cannot reasonably advance this argument because, as Plaintiff's counsel has

pointed out to counsel for Defendants in several cases, a federal court's jurisdiction over state-law claims is based on federal law—28 U.S.C. § 1367—and Illinois law cannot limit that jurisdiction. *Rodriguez v. Cook County*, 664 F.3d 627, 631–32 (7th Cir. 2011).

The Seventh Circuit in *Rodriguez* addressed the exact argument advanced by Defendants in this case: that Illinois law deprives federal courts of jurisdiction over state-law claims against certain state officials. *Id.* at 631. The Court unequivocally rejected this argument, stating that even "if Illinois had purported to insist that all civil litigation against [certain state officials] occur in state courts, that could not curtail federal jurisdiction. Congress, not the states, determines the jurisdictional authority of the federal courts." *Id.* at 632. In other words, "states cannot insist that any particular category of litigation be conducted only in state court." *Id.*; *see also Fields v. Wharrie*, 672 F.3d 505, 518 (7th Cir. 2012) ("[A] state employee's sovereign-immunity defense does not impact a federal court's jurisdiction over a case."); *Atkins v. Hasan*, No. 15 C 0203, 2015 WL 3862724, at *8 (N.D. Ill. June 22, 2015); *Woods v. Cook County*, No. 13 C 2607, 2014 WL 340422, at *4 (N.D. Ill. Jan. 30, 2014). Defendants' failure to address *Rodriguez* is troubling.

To the extent that Defendants ask this Court to dismiss Plaintiff's state-law claims based on a substantive application of state-law sovereign immunity, the Seventh Circuit has rejected that argument as well. *Murphy v. Smith*, 844 F.3d 653, 658 (7th Cir. 2016). The Seventh Circuit in *Murphy*, applying Illinois law, held that "[i]f the plaintiff alleges that state officials or employees violated 'statutory or constitutional law,' '[s]overeign immunity affords no protection.'" *Id.* at 658–59 (quoting *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990)); *see also Leetaru v. Board of Trustees of University of Illinois*, 32 N.E.3d 583, 595 (Ill. 2015) (sovereign immunity does not apply to officers who act in violation of constitutional law). In

14

other words, whether Defendants are entitled to state sovereign immunity depends on whether Plaintiff can ultimately prevail in proving a constitutional violation. *Id.* at 659. Plaintiff's federal claims and state-law claims thus rise and fall together.

Accordingly, because at the pleadings stage this Court must take Plaintiff's allegations as true, and because as true, Plaintiff has clearly alleged that Defendants acted in violation of Mr. Jenkins's constitutional rights, this Court cannot dismiss Plaintiff's state-law claims based on sovereign immunity. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (district courts must follow the Seventh Circuit's interpretation of state law). Accordingly, Defendants' motion to dismiss Counts IV–VIII should be denied.[5]

## V.    Transfer Is Not Warranted In This Case.

Defendants have also moved to transfer this case to the Central District of Illinois. Defendants argue that venue is not proper, and even if it is, this Court is inconvenient for them. Both of Defendants' arguments are without merit.

### A.    Venue in the Northern District of Illinois Is Proper.

The only argument Defendants offer to justify changing the venue is that Plaintiff has no legitimate claims against Defendant Pfister. Motion at 8–9. For the reasons articulated in Sections I, II, and IV above, Plaintiff has adequately asserted failure-to-intervene and conspiracy claims, as well as related state-law claims, against Defendant Pfister. *See supra* pg. 3–11, 14–16.

---

[5] In a footnote to their motion, Defendants "request" that even if this Court finds that sovereign immunity does not compel dismissal, the Court decline to exercise supplemental jurisdiction. Motion at 13 n.5. Defendants offer no authority or argument in support of their request and accordingly, it is forfeited. *ArlinGolf, LLC v. Village of Arlington Heights*, 631 F.3d 818, 822 (7th Cir. 2011); *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 407–08 (7th Cir. 2007). Even on its merits, Defendants' request should be denied because the state-law claims arise from the same set of facts underlying Plaintiff's federal claims, and thus it would be a waste of judicial resources (not to mention the prospect of inconsistent judgments) to have two different courts and juries resolving the same issues.

Because Plaintiff has properly named Defendant Pfister as a Defendant in this case, venue in this District is proper. 28 U.S.C. § 1391(b)(1) (venue is proper in "a judicial district in which any defendant resides" as long as all defendants reside in the state where the case is brought); *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 724 (7th Cir. 2013).[6] Accordingly, the Court should deny Defendants' motion to transfer on the basis of improper venue.

### B.    Defendants Have Failed to Show Why Transfer Is Appropriate.

Defendants next argue that even if venue is proper under section 1391, it should be transferred pursuant to 28 U.S.C. § 1404. As this Court recently articulated, section 1404 allows a court to transfer a matter "where the moving party demonstrates the following: (1) venue was proper in the transferor district; (2) venue and jurisdiction would be proper in the transferee district; and (3) the transfer will serve the convenience of the parties and the witnesses as well as the interests of justice." *Simonian v. Hunter Fan Co.*, No. 10 C 1212, 2010 WL 3975564, at *1 (N.D. Ill. Oct. 7, 2010). The party seeking a transfer under section 1404 bears the burden to show that the transferee forum is "clearly more convenient." *Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1059 (N.D. Ill. 2015) (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986)). Transfer under section 1404 is not mandatory. *See* 28 U.S.C. § 1404(a); *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 (1988) ("Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." (internal quotation marks omitted)).

---

[6] In their motion, Defendants incorrectly state that section 1391 confers venue only in the judicial district where *all* defendants reside. Motion at 9. In support, Defendants cite to an outdated case considering an earlier version of section 1391. The venue statute has since been amended to confer venue in a district where any defendant lives, as long as all defendants reside in the same state. 28 U.S.C. § 1391; *see also Calif. Serv. Emp. Health & Welfare Trust Fund v. Advance Bldg. Maintenance*, No. 10 C 3078, 2007 WL 4570629, at *3 (N.D. Cal. Dec. 26, 2007) (discussing earlier version of section 1391).

16

Transfer is inappropriate in this case because it would not serve the convenience of the parties or witnesses or the interests of justice, and Defendants have failed to make any showing to the contrary. Regarding the convenience evaluation, the Seventh Circuit has directed courts to "consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum." *Research Automation, Inc. v. Schrader-Bridgeport Inter'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Resolution of the "interest of justice" element "relates to the efficient administration of the court system" and requires courts to "look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums, each court's relative familiarity with the relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy." *Id.* (internal citations omitted). Consideration of both factors counsel against transfer.

### 1.      Convenience of the Parties and Witnesses Counsels Against Transfer.

Defendants have failed to satisfy their burden to show that convenience of the parties and witnesses favors transfer of this case. Indeed, they have advanced a single erroneous argument, articulated in just two sentences, in support of their motion. Motion at 9–10 (stating that "all of the Defendants" continue to work at Pontiac and erroneously concluding that "[a]ll witnesses and all discovery depositions" except for Defendant Pfister's "will be conducted at Pontiac").

Contrary to Defendants' unsupported assertions, consideration of the convenience of parties and witnesses counsels against transfer in this case.

Plaintiff, the administrator of Mr. Jenkins's estate, resides in Chicago, Illinois. Ex. A (Declaration of Sarah Grady) ¶ 3. The fact that Plaintiff has chosen to file this case in her home district alone strongly counsels against transfer, since "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto*

*Indus., Inc.*, 347 F.3d 662, 663–64 (7th Cir. 2003) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Terrance Jenkins, Jr., the son of Mr. Jenkins and the heir to his estate, also resides in Chicago, Illinois. Ex. A ¶ 4. Mr. Jenkins's estate has been opened in the Circuit Court of Cook County (in Chicago). Ex. B. Prior to his incarceration, Mr. Jenkins resided here. Ex. A ¶ 5. Accordingly, it is far more convenient for Plaintiff to have her claims heard in this District.

Defendants Pfister and Bufford's convenience is also served by having this case heard in the Northern District. On information and belief, Defendant Pfister—who currently works at Stateville Correctional Center—resides in Lockport, Illinois, 36 miles from the federal courthouse in Chicago and 121 miles from the federal courthouse in Peoria. *Id.* ¶ 6. Defendant Bufford resides in Kankakee, Illinois, 64.9 miles from the federal courthouse in Chicago and 106 miles from the federal courthouse in Peoria (the location where the case would be heard if this Court transferred it to the Central District).[7] Ex. C. As such, it is actually more convenient for them to attend trial in this District rather than the Central District.

Moreover, Pontiac Correctional Center is situated between the two federal courthouses—57.1 miles from the federal courthouse in Peoria and 98.5 miles from the federal courthouse in Chicago. Thus the convenience of witnesses who work at Pontiac does not strongly tilt toward hearing the case in one District over another.

---

[7] All mileage in Plaintiff's response was calculated using Google Maps based on the shortest driving distance.  *See* https://www.maps.google.com (last visited February 15, 2017).  The address used to calculate distances to the federal courthouse in Chicago is 219 South Dearborn St., Chicago, Illinois 60604.  *See* http://www.ilnd.uscourts.gov/ClerksOffice.aspx (last visited February 15, 2017). The address used to calculate distances to the federal courthouse in Peoria is 100 N.E. Monroe St., Peoria, Illinois 61602.  *See* http://www.ilcd.uscourts.gov/content/peoria (last visited February 15, 2017).

Other witnesses include prisoners, who are located all over the State of Illinois and may be transferred from one Illinois Department of Corrections prison to another at any point,[8] experts, for whom Chicago (with an international airport) is far more convenient, and third-party treaters at St. James Hospital, which is also approximately equidistant from the two federal courthouses.

Defendants argue that transfer is warranted because all depositions in this case (except Defendant Pfister's) will occur at Pontiac Correctional Center. Motion at 9–10. This assertion is incorrect. Each witness will be deposed in a location convenient for him or her. Although some witnesses may be deposed near Pontiac Correctional Center (i.e., guards who are still working at Pontiac at the time of their deposition), other witnesses will be deposed in Chicago (i.e., Plaintiff, Terrance Jenkins, Jr., Mr. Clemmons, one or more expert), and other witnesses will be deposed in as-yet undetermined locations, including prisons around the state. In any event, the location of a person's deposition is not the question before the Court; instead, the Court must decide whether Defendants have met their burden to show that the convenience of the parties and witnesses favors transfer. They have not.

> **2.    Defendants Have Waived Any Argument That the Interests of Justice Favor Transfer and Even On Its Merits, the Interests of Justice Counsel Against Transfer.**

Despite having the burden to show that the interests of justice favor transfer, Defendants have failed to articulate a single argument or explanation as to how the interests of justice are served by a transfer.[9] Defendants have thus forfeited the argument and the Court should deny

---

[8] For example, one such witness, Edward Clemmons, was recently released from prison and, on information and belief, now lives in Oak Lawn, Illinois, 18.2 miles from the federal courthouse in Chicago and 144 miles from the federal courthouse in Peoria.

[9] Additionally, Defendants have cited to a case they refer to only as "*Galindo*" in their brief, asking the Court to grant transfer "[s]imilar to the court in *Galindo* . . . ." Motion at 10. They do not provide the

their motion to transfer on this ground alone. *ArlinGolf, LLC*, 631 F.3d at 822; *Humphries*, 474 F.3d at 407–08.

Yet even on its merits—by hypothesizing what arguments Defendants might have made—consideration of the interests of justice counsel against transfer. Defendants have presented no evidence about the relative caseloads of the Northern and Central Districts of Illinois nor any evidence about the caseload of judges in the Central District (as compared with this Court). Yet regardless of the comparative caseloads, the evidence indicates that interests of efficiency are served by keeping this case before this Court. According to the most recent Civil Justice Reform Act report, district judges in the Central District had on average 6.75 cases pending more than three years each, more than double the number of cases (3) that this Court has had pending for that time. Civil Justice Reform Act (CJRA) Text and Appendices, Mar. 2016, *available at* www.uscourts.gov/statistics-reports/march-2016-civil-justice-reform-act (last visited Feb. 15, 2017). In the September 2015 CJRA report, the Central District carried on average 6 cases that were three years old or more, more than six times the number that this Court had (1). CJRA Text and Appendices, Sept. 2015, *available at* www.uscourts.gov/statistics-reports/september-2015-civil-justice-reform-act (last visited Feb. 15, 2017). Accordingly, consideration of docket congestion and likely speed to trial counsel against transfer in this case.

Both the Northern and Central Districts are equally familiar with the federal and state law that will provide the substantive rules of decision in this case. Accordingly, this factor neither counsels for or against transfer.

The final considerations look to forum's connection with the controversy at issue in the case. *Research Automation, Inc.*, 626 F.3d at 978. One could imagine that on this front,

---

long-form citation and despite thorough research, Plaintiff could find no such case.  Accordingly, this Court should not rely on any invocation of this case.

Defendants may argue that this factor counsels toward transfer because the murder happened at Pontiac Correctional Center, which is located just on the south side of the line dividing the Northern and Central Districts. Defendants did *not* make this argument, and as mentioned above, the Court should find that they have therefore waived it. *ArlinGolf, LLC*, 631 F.3d at 822; *Naducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009).

But even on its merits, that argument fails to account for the Northern District community's strong connection with this case, too. More than 62 percent of all prisoners incarcerated in the Illinois Department of Corrections come from counties in the Northern District; half come from Cook County alone. Ill. State Comm'n on Crim. Justice & Sentencing Reform, *Illinois Prison Overview*, *available at* www.icjia.org/cjreform2015/research/Illinois-prison-overview.html (last visited Feb. 15, 2017). Accordingly, those communities have a strong interest in ensuring that their residents are treated humanely, in accordance with the protections of the Constitution, while locked up by the State of Illinois. Mr. Jenkins himself was a resident of Chicago, and thus, his community should have the right to hear Plaintiff's claims against Defendants for violating his constitutional rights and causing his death.

In summary, Defendants have wholly failed to meet their burden to show that transfer is appropriate under section 1404(a). Venue is clearly proper pursuant to section 1391 given Defendant Pfister's residency in the Northern District and Plaintiff's valid claims against him. As such, Defendants' motion to transfer this case to the Central District should be denied.

## CONCLUSION

For the reasons articulated above, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss and Motion to Transfer in their entirety.

Respectfully submitted,

/s/ Sarah Grady
Sarah Grady
Attorney for Plaintiff

Jon Loevy
Arthur Loevy
Russell Ainsworth
Sarah Grady
Katherine Roche
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

I, Sarah Grady, an attorney, certify that on February 16, 2017, I caused the foregoing Plaintiff's Response to Motion Defendants' Motion to Dismiss and Motion to Move Venue to be filed using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Sarah Grady
Sarah Grady
Attorney for Plaintiff