**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| PHYLLIS ELLIS, as Administrator of the | ) | |
| Estate of Terrance Jenkins | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 17-1254 |
| | ) | |
| RANDY PFISTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**ANSWER AND AFFIRMATIVE DEFENSES
DIRECTED TO PLAINTIFF'S AMENDED COMPLAINT**</u>

The Defendants, JAMES BOLAND, CHRISTOPHER BUFFORD, ADAM DEAL,

RANDY PFISTER, and MARVIN REED, by and through their attorney, Lisa Madigan,

Attorney General for the State of Illinois, provide the following answer and affirmative defenses

directed to Plaintiff's amended complaint [d/e 79]:

Introduction

1.      On October 4, 2015 at the Pontiac Correctional Center, Defendants Boland, Deal,

Bufford, and Miller beat Terrance Jenkins while he was defenseless.   Joined by the other

Defendants, and while Mr. Jenkins had his arms and legs retrained in cuffs, the Defendants then

continued to beat Mr. Jenkins, ultimately placing him in a choke hold and suffocating him to death.

Answer:   Defendants deny the allegations contained in paragraph 1.

2.      Mr. Jenkins's death was not the first incident of unjustified and unconstitutional

violence by correctional officers at Pontiac Correctional Center, nor was it the first incident of

excessive force by the Defendant Officers. Prior to Mr. Jenkins's death, incidents of excessive

force and violence at Pontiac by correctional officers were commonplace. Despite knowledge of this pattern of violence, Defendant Pfister (the Warden at Pontiac), Defendant Reed (an Assistant Warden), and Guy Pierce (the Assistant Warden of Operations at Pontiac) failed to take any adequate action to prevent incidents of excessive force, like that used against Mr. Jenkins, from occurring.

Answer:   Defendants deny the allegations contained in paragraph 2.

## Jurisdiction and Venue

3.       This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

Answer:   Defendants do not dispute that this Court has subject matter jurisdiction over the claims arising under federal law.   Defendants dispute that this Court has subject matter jurisdiction over any state law claims.

4.       Venue is proper under 28 U.S.C. § 1391(b).

Answer:   Defendants do not dispute that venue is proper in the Central District of Illinois.

## Parties

5.       Terrance Jenkins, the decedent, was a 56-year-old prisoner housed at Pontiac Correctional Center (Pontiac). Phyllis Ellis is Mr. Jenkins's ex-wife, and has been duly appointed as administrator of Mr. Jenkins's estate.

Answer:   Defendants admit that Terrance Jenkins was an inmate incarcerated at Pontiac Correctional Center.   Defendants do not dispute that Plaintiff is a former spouse of Jenkins or that she has been appointed administrator of his estate.

6.       At all times relevant to his involvement in this case, Defendant James Boland was a correctional lieutenant at Pontiac and an employee of the Illinois Department of Corrections (IDOC). Defendant Boland is sued here in his individual capacity. At all times relevant to the events

at issue in this case, Defendant Boland was acting under color of law and within the scope of his

employment.

> Answer:   Defendants admit that Defendant Boland was a correctional lieutenant at
> Pontiac Correctional Center and an employee of IDOC on October 4, 2015.   Defendants
> admit he is sued in his individual capacity, though they deny they are liable for the
> allegations in this suit.   Defendants admit they acted under the color of law and within
> the scope of their employment in performing their job duties.

7.      At all times relevant to his involvement in this case, Defendant Darrin Shull was a

correctional major at Pontiac Correctional Center and an employee of the Illinois Department of

Corrections (IDOC). Defendant Shull is sued here in his individual capacity. At all times relevant

to the events at issue in this case, Defendant Shull was acting under color of law and within the

scope of his employment.

> Answer:   Defendants admit that Darrin Shull was a correctional lieutenant at Pontiac
> Correctional Center and an employee of IDOC on October 4, 2015.   Defendants lack
> knowledge or information sufficient to form a belief as to the truth of the remaining
> allegations contained in paragraph 7.

8.      At all times relevant to their involvement in this case, Defendants Deal, Bufford,

Miller, Caudle, Kram, Dayton, Pickham, Toppel, and Frazier, were correctional officers at Pontiac

Correctional Center and employees of the IDOC. Defendants Deal, Bufford, Miller, Caudle, Kram,

Dayton, Pickham, Toppel, and Frazier are sued here in their individual capacities. At all times

relevant to the events at issue in this case, Defendants Deal, Bufford, Miller, Caudle, Kram,

Dayton, Pickham, Toppel, and Frazier were acting under color of law and within the scope of

their employment.

> Answer:   Defendants admit that they were correctional officers at Pontiac Correctional
> Center and employees of IDOC on October 4, 2015.   Defendants admit they are sued in
> their individual capacities, though they deny they are liable for the allegations in this
> suit.   Defendants admit they acted under the color of law and within the scope of their
> employment in performing their job duties.   Defendants admit that the other individuals
> named above were correctional officers at Pontiac Correctional Center and employees of

IDOC on October 4, 2015.  Defendants lack knowledge or information sufficient to form a belief as to truth of the remaining allegations contained in paragraph 8.

9.  At all times relevant to their involvement in this case, Defendants Tinsley and Eshleman were Medical Technicians at Pontiac Correctional Center and employees of the IDOC. Defendants Tinsley and Eshleman are sued here in their individual capacities. At all times relevant to the events at issue in this case, Defendants Tinsley and Eshleman were acting under color of law and within the scope of their employment.

Answer:  Defendants admit that Tinsley and Eshleman were correctional medical technicians at Pontiac Correctional Center.  Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 9.

10.  At all times relevant to his involvement in this case, Defendant Randy Pfister was the Warden at Pontiac and an employee of the IDOC. Defendant Pfister was responsible for the implementation, oversight, and supervision of policies and practices at Pontiac, and the oversight and discipline of staff there.  Defendant Pfister is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Pfister was acting under color of law and within the scope of his employment.

Answer:  Defendants admit that Defendant Pfister the Warden at Pontiac Correctional Center and an employee of IDOC on October 4, 2015.  Defendants deny that Pfister was personally responsible for all of the duties as alleged.  Defendants admit he is sued in his individual capacity, though they deny they are liable for the allegations in this suit. Defendants admit they acted under the color of law and within the scope of their employment in performing their job duties.

11.  At all times relevant to his involvement in this case, Defendant Marvin Reed was the Assistant Warden of Operations at Pontiac and an employee of the IDOC. Defendant Reed was responsible for the implementation, oversight, and supervision of policies and practices at Pontiac, and the oversight and discipline of staff there. Defendant Reed is sued here in his

individual capacity. At all times relevant to the events at issue in this case, Defendant Reed was acting under color of law and within the scope of his employment.

> Answer:   Defendants admit that Marvin Reed was an employee of IDOC at the times relevant to this suit; however, Defendants deny the remaining allegations contained in paragraph 11.

12.      Defendant Guy Pierce was the Assistant Warden of Operations at Pontiac immediately before Defendant Reed took over the position. At all times relevant to his involvement in this case, Defendant Pierce was an employee of the IDOC. During his tenure at Pontiac, Defendant Pierce was responsible for the implementation, oversight, and supervision of policies and practices at Pontiac, and the oversight and discipline of correctional staff there. Defendant Pierce is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Pierce was acting under color of law and within the scope or his employment.

> Answer:   Defendants admit that Guy D. Pierce was an Assistant Warden of Operations at Pontiac Correctional Center and an employee of IDOC on October 4, 2015.   Defendants deny that the allegations concerning the position or job description are accurate and deny that Pierce was personally responsible for all of the duties as alleged.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 12.

## Allegations

13.      In early October 2015, Mr. Jenkins was being housed in the protective custody unit of Pontiac. He was 56 years old.

> Answer:   Defendants admit that Jenkins was housed in the protective custody unit at Pontiac and that he was 56 years old in October 2015.

14.      Mr. Jenkins was an avid card and dominoes player. He frequently could be found in the recreation area playing dominoes with the other prisoners in their 50s in his housing unit.

Answer:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14.

15.     Mr. Jenkins also had glaucoma and was receiving ongoing medical treatment at Pontiac for it. Because of his glaucoma, Mr. Jenkins had excessive eye drainage.

Answer:  Upon information and belief, Defendants admit that Jenkins had glaucoma and received ongoing medical treatment for it.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 15.

16.     On October 4, 2015, Mr. Jenkins left his housing unit to go to the outdoor recreation area for prisoners in protective custody. Defendants Boland, Deal, Bufford, and Miller were monitoring prisoners in the area immediately inside of the recreation area.

Answer:  Defendants deny the allegations contained in paragraph 16.

17.     Mr. Jenkins brought a small amount of tissue paper with him to the recreation area. Mr. Jenkins brought the tissue because he suffered from glaucoma and his eyes watered frequently. At the time, there was no tissue in the recreation area available to inmates.

Answer:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17.

18.     During a pat down search of Mr. Jenkins, either Defendant Deal, Bufford, or Miller found the tissue paper in Mr. Jenkins's breast pocket. The officer told Mr. Jenkins that he was going to take his "yard time" away because Mr. Jenkins could not bring tissue paper into the recreation area. Mr. Jenkins explained that he needed the tissue paper because of his glaucoma and the resulting excessive eye drainage.

Answer:  Defendants deny the allegations contained in paragraph 18.

19.     Defendant Boland cursed at Mr. Jenkins and yelled at him to "cuff the fuck up," or words to that effect. Mr. Jenkins continued to try to explain that he needed the tissue paper for medical reasons.

Answer:   Defendants deny the allegations contained in paragraph 19.

20.     Mr. Jenkins also told Defendant Boland not to treat him like a child, or words to that effect.

Answer:   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20.

21.     Defendants became enraged by Mr. Jenkins's perceived attack on their authority. Defendant Deal, without justification, pushed Mr. Jenkins into a wall and struck him in the back of his head with a closed fist.

Answer:   Defendants deny the allegations contained in paragraph 21.

22.     Defendants Boland, Bufford, Deal, and Miller then restrained Mr. Jenkins in handcuffs and leg restraints preventing Mr. Jenkins from resisting in any way. While Mr. Jenkins was unable to move, Defendant Boland then sprayed his chemical spray directly in Mr. Jenkins's face.

Answer:   Defendants deny the allegations contained in paragraph 22.

23.      Despite the fact that he was totally immobilized, these Defendants then viciously attacked Mr. Jenkins, beating and kicking him.

Answer:   Defendants deny the allegations contained in paragraph 23.

24.      These same Defendants then dragged Mr. Jenkins into a side room outside of the view of security cameras.

Answer:   Defendants deny the allegations contained in paragraph 24.

25.      Defendants Boland, Deal, Miller, and Bufford were then joined by Defendants
Caudle, Shull, Kram, Dayton, Pickham, Toppel, Frazier, Tinsley and Eshleman. The Defendants
jointly continued beating Mr. Jenkins. At one point, Defendant Deal placed Mr. Jenkins in a
choke hold and pressed his body weight onto Mr. Jenkins's torso.

Answer:   Defendants deny the allegations contained in paragraph 25.

26.      One or more of the Defendants then shoved some paper (perhaps the same tissue
paper that triggered the beating) into Mr. Jenkins's throat, further restricting his airway.

Answer:   Defendants deny the allegations contained in paragraph 26.

27.      The only Defendants who did not use force against Mr. Jenkins were Defendants
Shull, Tinsley and Eshleman.   These Defendants, however, witnessed the egregious use of force
described in paragraphs 22-26 and, instead of intervening to prevent Mr. Jenkins's death, stood idly
by and, therefore, encouraged the abuses perpetrated upon Mr. Jenkins.

Answer:   Defendants deny the allegations contained in paragraph 27.

28.      Mr. Jenkins cried out that he could not breathe.   Other inmates called to the
Defendants, alerting them to the fact that Mr. Jenkins could not breathe.   Nevertheless, the
Defendants jointly continued using force against Mr. Jenkins, including pressing upon his chest
cavity such that Mr. Jenkins was unable to breathe.

Answer:   Defendants deny the allegations contained in paragraph 28.

29.      Eventually, as a result of the beating, the paper in his airway, the choke hold, and
one or more Defendants compressing Mr. Jenkins's lungs with their body weight, Mr. Jenkins
became unconscious and stopped breathing.

Answer:   Defendants deny the allegations contained in paragraph 29.

30.     Medical personnel tried to resuscitate Mr. Jenkins at the scene, but their efforts were unsuccessful.

Answer:   Defendants admit that efforts were made to resuscitate Mr. Jenkins after he became unresponsive; however, Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 30.

31.     An ambulance was summoned to transport Mr. Jenkins to the hospital. When the emergency medical technicians arrived, who were unaffiliated with Pontiac Correctional Center, they asked a simple question, intended to ascertain information necessary to render aid to Mr. Jenkins: "What happened?"

Answer:   Defendants admit that an ambulance was summoned for Mr. Jenkins. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 31.

32.     The emergency medial technicians' question was met with silence.   None of the Defendants (or anyone else) provided any explanation for why Mr. Jenkins lay dying on a stretcher in Pontiac's healthcare unit.

Answer:   Defendants deny the allegations contained in paragraph 32.

33.     The emergency medical technicians attempted to treat Mr. Jenkins regardless, and transported him to a nearby hospital.

Answer:   Defendants admit that Jenkins was transported to a nearby hospital by ambulance with emergency medical technicians.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 33.

34.     Tragically, Mr. Jenkins was pronounced dead shortly after his arrival at the hospital.

Answer:   Defendants admit that Jenkins was pronounced dead at the hospital in the afternoon of October 4, 2015.

35.     Back at Pontiac Correctional Center, Defendant Bufford asked Defendant Boland
if he "held back this time."

Answer:   Defendants deny the allegations contained in paragraph 35.

36.     Defendant Boland responded, "No, I don't hold back. I went full throttle."

Answer:   Defendants deny the allegations contained in paragraph 36.

37.     The forensic pathologist who conducted Mr. Jenkins's autopsy concluded that he
died as a result of "restraint asphyxia and airway occlusion by a foreign object." The autopsy
further noted that the restraint asphyxia that caused his death consisted of weight applied on Mr.
Jenkins while in a prone position with "restricted movement of his arms and legs."

Answer:   Based upon the Livingston County Coroner's Amended Report, Defendants
admit that an amended cause of death opinion was signed on August 31, 2016, and that
the amended opinion contained the language noted above along with additional language.

38.     The unjustified attack on Mr. Jenkins was not an isolated incident at Pontiac. To the
contrary, unjustified violence against prisoners at the prison is a common occurrence. Yet despite
this widespread culture of violence, Defendants Pfister, Reed, and Pierce failed to take any
meaningful action to prevent prisoners like Mr. Jenkins from being harmed by officers charged
with protecting them.

Answer:   Defendants deny the allegations contained in paragraph 38.

39.     Indeed, this was not the first instance of excessive force by Defendants Bolden,
Deal, and/or Bufford. For example, approximately one week before they killed Mr. Jenkins,
Defendants Deal and Bufford beat another prisoner at Pontiac.

Answer:   Defendants deny the allegations contained in paragraph 39.

40.     When correctional officers use force, IDOC policy requires those officers to write reports documenting the circumstances surrounding that use of force. On information and belief, Defendants Pfister, Reed, and Pierce reviewed these reports, as well as grievances that may have been written complaining about the prior instances of excessive force.

Answer:   Defendants admit IDOC policy requires employees to document unusual incidents, including the use of force.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 40.

41.     Despite their awareness of the issue, Defendants Pfister, Reed, and Pierce failed to provide appropriate supervision, discipline, or training, or to take any action to prevent the repeated instances of excessive force by Defendants.

Answer:   Defendants deny the allegations contained in paragraph 41.

COUNT I
42 U.S.C. § 1983 — Excessive Force (Eighth Amendment)
Defendants Boland, Deal, Bufford, Miller, Caudle,
Kram, Dayton, Pickham, Toppel, and Frazier

42.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

Answer:   Defendants re-state and incorporate their answers to the previous allegations.

43.     As described more fully above, Defendants Boland, Deal, Bufford, Miller, Caudle, Kram, Dayton, Pickham, Toppel, and Frazier used force against Mr. Jenkins, thereby causing his death. That use of force was unreasonable in light of the facts and circumstances present at the time that the force was used.

Answer:   Defendants deny the allegations contained in paragraph 43.

44.     In using force against Mr. Jenkins, these Defendants intentionally used extreme or excessive cruelty toward him for the very purpose of causing him harm, and not in a good faith effort to maintain or restore security or discipline.

Answer: Defendants deny the allegations contained in paragraph 44.

45. Alternatively, these Defendants knew that using force presented a risk of harm to Mr. Jenkins, but they recklessly disregarded that risk and Mr. Jenkins's safety by failing to take reasonable measures to minimize that risk of harm.

Answer: Defendants deny the allegations contained in paragraph 45.

46. As a result of the unjustified and unconstitutional conduct of these Defendants, Mr. Jenkins experienced pain, suffering, emotional distress, injury, and ultimately death.

Answer: Defendants deny the allegations contained in paragraph 46.

COUNT II
42 U.S.C. § 1983 — Failure to Intervene (Eighth Amendment)
All Defendants

47. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

Answer: Defendants re-state and incorporate their answers to the previous allegations.

48. As described more fully above, all of the Defendants had a reasonable opportunity to prevent the violation of Mr. Jenkins's constitutional rights as set forth above had they been so inclined, but failed to do so.

Answer: Defendants deny the allegations contained in paragraph 48.

49. Defendants knew of a substantial risk of harm to Mr. Jenkins's safety, but consciously disregarded that risk by failing to take reasonable steps to prevent the harm from occurring.

Answer: Defendants deny the allegations contained in paragraph 49.

50. Defendants' failures to act were intentional, done with malice, and/or done with deliberate indifference to Mr. Jenkins's rights.

Answer:   Defendants deny the allegations contained in paragraph 50.

51.     As a result of Defendants' unconstitutional failure to intervene, Mr. Jenkins experienced pain, suffering, emotional distress, injury, and ultimately death.

Answer:   Defendants deny the allegations contained in paragraph 51.

52.     Mr. Jenkins's injuries were proximately caused by the policies and practices of Defendants Pfister, Reed, and Pierce.

Answer:   Defendants deny the allegations contained in paragraph 52.

53.     Prior to October 2015, Defendants Pfister, Reed, and Pierce had notice that Defendants Boland, Deal, and/or Bufford were using excessive force against prisoners at Pontiac.   Despite this knowledge, Defendants Pfister, Reed, and Pierce failed to adequately supervise, discipline, or train them, or take any other reasonable measures to prevent them from using excessive force against Mr. Jenkins.

Answer:   Defendants deny the allegations contained in paragraph 53.

54.     Similarly, prior to October 2015, Defendants Pfister, Reed, and Pierce knew that correctional staff at Pontiac were routinely using excessive force against prisoners housed there. This routine use of excessive force was widespread and pervasive. Despite knowledge of this unconstitutional use of force, Defendants Pfister, Reed, and Pierce failed to adequately supervise, discipline, or train correctional staff, or take any other reasonable measures to prevent officers like Defendants Boland, Deal, Bufford, Miller, Caudle, Kram, Dayton, Pickham, Toppel, and Frazier from using excessive force against Mr. Jenkins.

Answer:   Defendants deny the allegations contained in paragraph 54.

55.     At all times relevant to their involvement in this case, Defendants Pfister, Reed, and Pierce were responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding use of force at Pontiac; the training of correctional staff at Pontiac on use of force; and the supervision and discipline of correctional staff at Pontiac.

Answer:   Defendants deny the allegations contained in paragraph 55.

56.     The above-described widespread use of excessive force at Pontiac, so pervasive as to constitute de facto policy at Pontiac, was able to exist and thrive because Defendants Pfister, Reed, and Pierce were deliberately indifferent to the problem, thereby effectively ratifying it.

Answer:   Defendants deny the allegations contained in paragraph 56.

57.     Mr. Jenkins's injuries were caused by employees of IDOC, including but not limited to Defendants Boland, Deal, Bufford, Miller, Caudle, Kram, Dayton, Pickham, Toppel, and Frazier who acted pursuant to the de facto policies at Pontiac, described above, that were ratified by Defendants Pfister, Reed, and Pierce.

Answer:   Defendants deny the allegations contained in paragraph 57.

## COUNT III
### 42 U.S.C. § 1983 - Conspiracy
### All Defendants

58.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

Answer:   Defendants re-state and incorporate their answers to the previous allegations.

59.     Defendants reached an agreement among themselves to deprive Mr. Jenkins of his constitutional rights and to protect one another from liability for depriving Mr. Jenkins of his rights, all as described in the various paragraphs of this Complaint.

Answer:   Defendants deny the allegations contained in paragraph 59.

60.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

Answer:   Defendants deny the allegations contained in paragraph 60.

61.     The misconduct described in this Count was undertaken intentionally, with malice, and/or with reckless indifference to Mr. Jenkins's rights.

Answer:   Defendants deny the allegations contained in paragraph 61.

62.     As a direct and proximate result of the illicit prior agreement referenced above, Mr. Jenkins's rights were violated and he suffered injuries, including pain, suffering, emotional distress, and ultimately death.

Answer:   Defendants deny the allegations contained in paragraph 62.

63.     Mr. Jenkins's injuries were caused by employees of IDOC, including but not limited to Defendants Boland, Deal, Bufford, Miller, Caudle, Kram, Dayton, Pickham, Toppel, and Frazier who acted pursuant to the de facto policies at Pontiac, described above, that were ratified by Defendants Pfister, Reed, and Pierce.

Answer:   Defendants deny the allegations contained in paragraph 63.

## COUNT IV
### 755 ILCS 5/27-6 (Survival Act) - Intentional Infliction of Emotional Distress
### Defendants Boland, Deal, and Bufford

64.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

Answer:   Defendants re-state and incorporate their answers to the previous allegations.

65.     In the manner described more fully above, by beating Mr. Jenkins to death without reasonable justification and suffocating him, Defendants Boland, Deal, and Bufford engaged in extreme and outrageous conduct.

Answer:   Defendants deny the allegations contained in paragraph 65.

66.     Defendants' actions as set forth above were rooted in an abuse of power or authority.

Answer:   Defendants deny the allegations contained in paragraph 66.

67.     Defendants' actions as set forth above were undertaken intentionally or with knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

Answer:   Defendants deny the allegations contained in paragraph 67.

68.     Defendants' actions, as set forth above, were undertaken intentionally, with malice, and/or with reckless indifference to Mr. Jenkins's rights.

Answer:   Defendants deny the allegations contained in paragraph 68.

69.     As a direct and proximate result of Defendants' misconduct, Mr. Jenkins suffered injuries, including severe emotional distress and great conscious pain and suffering prior to his death.

Answer:   Defendants deny the allegations contained in paragraph 69.

70.     Mr. Jenkins filed no action during his lifetime, but under the laws of the State of Illinois, this action survives and may be asserted by his Estate.

Answer:   Defendants do not dispute that the Estate is allowed to pursue certain claims under Illinois law.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 70.

71.     Plaintiff Phyllis Ellis, in her capacity as Administrator of the Estate of Terrance Jenkins, claims damages for the conscious pain and suffering of Terrance Jenkins, pursuant to 755 ILCS 5/27-6, commonly referred to as the Illinois Survival Act.

Answer:   Defendants deny they are liable for any damages to Plaintiff and deny that Plaintiff is entitled to the relief she seeks.

COUNT V
755 ILCS 5/27-6 (Survival Act) - Battery
Defendants Boland, Deal, and Bufford

72.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

Answer:   Defendants re-state and incorporate their answers to the previous allegations.

73.     As described more fully above, Defendants Boland, Deal, and Bufford

intentionally made physical contact with Mr. Jenkins without valid cause. That physical contact

was offensive and harmful.

Answer:   Defendants deny the allegations contained in paragraph 73.

74.     Defendants committed these acts intentionally, willfully, and wantonly.

Answer:   Defendants deny the allegations contained in paragraph 74.

75.     The misconduct described in this Count was undertaken with intentional disregard

of Mr. Jenkins's rights.

Answer:   Defendants deny the allegations contained in paragraph 75.

76.     As a direct and proximate result of Defendants' misconduct, Mr. Jenkins suffered

great conscious pain and suffering prior to his death.

Answer:   Defendants deny the allegations contained in paragraph 76.

77.     Mr. Jenkins filed no action during his lifetime, but under the laws of the State of

Illinois, this action survives and may be asserted by his Estate.

Answer:   Defendants do not dispute that the Estate is allowed to pursue certain claims
under Illinois law.   Defendants lack knowledge or information sufficient to form a belief
as to the truth of the remaining allegations contained in paragraph 77.

78.     Plaintiff Phyllis Ellis, in her capacity as Administrator of the Estate of Terrance

Jenkins, claims damages for the conscious pain and suffering of Terrance Jenkins, pursuant to

755 ILCS 5/27-6, commonly referred to as the Illinois Survival Act.

Answer:   Defendants deny they are liable for any damages to Plaintiff and deny that Plaintiff is entitled to the relief she seeks.

COUNT VI
755 ILCS 5/27-6 (Survival Act) - Negligent or Willful and Wanton Conduct
All Defendants

79.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

Answer:   Defendants re-state and incorporate their answers to the previous allegations.

80.     In the manner described more fully above, the actions of Defendants breached the duty of care owed to detainees in their care. They did so by using excessive force against Mr. Jenkins and/or failing to intervene to prevent the use of excessive force against Mr. Jenkins.

Answer:   Defendants deny the allegations contained in paragraph 80.

81.     Alternatively, the actions of Defendants were willful and wanton in that they demonstrated an utter indifference to the safety of others. Defendants were aware that an injury would probably result from their actions or failures to act and recklessly disregarded the consequences of those actions or failures to act.

Answer:   Defendants deny the allegations contained in paragraph 81.

82.     The misconduct described in this Count was undertaken with intentional disregard of Mr. Jenkins's rights.

Answer:   Defendants deny the allegations contained in paragraph 82.

83.     As a direct and proximate result of Defendants' negligence and/or willful and wanton conduct, Mr. Jenkins suffered great conscious pain and suffering prior to his death.

Answer:   Defendants deny the allegations contained in paragraph 83.

84.     Mr. Jenkins filed no action during his lifetime, but under the laws of the State of Illinois, this action survives and may be asserted by his Estate.

Answer:   Defendants do not dispute that the Estate is allowed to pursue certain claims under Illinois law.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 84.

85.     Plaintiff Phyllis Ellis, in her capacity as Administrator of the Estate of Terrance Jenkins, claims damages for the conscious pain and suffering of Terrance Jenkins, pursuant to 755 ILCS 5/27-6, commonly referred to as the Illinois Survival Act.

Answer:   Defendants deny they are liable for any damages to Plaintiff and deny that Plaintiff is entitled to the relief she seeks.

COUNT VII
740 ILCS 180/1 (Wrongful Death) - Battery
Defendants Boland, Deal, and Bufford

86.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

Answer:   Defendants re-state and incorporate their answers to the previous allegations.

87.     As described more fully above, Defendants Boland, Deal, and Bufford intentionally made physical contact with Mr. Jenkins without valid cause. That physical contact was offensive and harmful.

Answer:   Defendants deny the allegations contained in paragraph 87.

88.     Defendants committed these acts intentionally, willfully, and wantonly.

Answer:   Defendants deny the allegations contained in paragraph 88.

89.     The misconduct described in this Count was undertaken with intentional disregard of Mr. Jenkins's rights.

Answer:   Defendants deny the allegations contained in paragraph 89.

90.     As a direct and proximate result of Defendants' misconduct, Mr. Jenkins suffered injuries, including death.

Answer:   Defendants deny the allegations contained in paragraph 90.

91.     Plaintiff Phyllis Ellis, on behalf of the next-of-kin (including Mr. Jenkins's son, Terrance Jenkins, Jr.) claims damages for the wrongful death of Mr. Jenkins, and for their loss of his services, protection, care, future income, assistance, society, companionship, comfort, guidance, counsel, and advice, as well as for their mental anguish caused by this loss, and for cremation and other expenses and damages pursuant to 740 ILCS 180/1, commonly referred to as the Illinois Wrongful Death Act.

> Answer:   Defendants deny they are liable for any damages to Plaintiff and deny that Plaintiff is entitled to the relief she seeks.

COUNT VIII
740 ILCS 180/1 (Wrongful Death) - Negligent or Willful and Wanton
Conduct
All Defendants

92.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

Answer:   Defendants re-state and incorporate their answers to the previous allegations.

93.     In the manner described more fully above, the actions of Defendants breached the duty of care owed to prisoners in their care. They did so by using excessive force against Mr. Jenkins and/or failing to intervene to prevent the use of excessive force against Mr. Jenkins.

Answer:   Defendants deny the allegations contained in paragraph 93.

94.     Alternatively, the actions of Defendants were willful and wanton in that they demonstrated an utter indifference to the safety of others. Defendants were aware that an injury would probably result from their actions or failures to act and recklessly disregarded the consequences of those actions or failures to act.

Answer:   Defendants deny the allegations contained in paragraph 94.

95.     As a direct and proximate result of Defendants' negligence and/or willful and wanton conduct, Mr. Jenkins suffered injuries, including death.

Answer:   Defendants deny the allegations contained in paragraph 95.

96.     Plaintiff Phyllis Ellis, on behalf of the next-of-kin (including Mr. Jenkins's son, Terrance Jenkins, Jr.) claims damages for the wrongful death of Mr. Jenkins, and for their loss of his services, protection, care, future income, assistance, society, companionship, comfort, guidance, counsel, and advice, as well as for their mental anguish caused by this loss, and for cremation and other expenses and damages pursuant to 740 ILCS 180/1, commonly referred to as the Illinois Wrongful Death Act.

Answer:   Defendants deny they are liable for any damages to Plaintiff and deny that Plaintiff is entitled to the relief she seeks.

Wherefore, Plaintiff Phyllis Ellis, as Administrator of the Estate of Terrance Jenkins, respectfully requests that this Court enter a judgment in her favor and against Defendants Randy Pfister, Lieutenant James Boland, Officer Adam Deal, Officer Christopher Bufford, Officer Chris Miller, Officer Derrick Caudle, Major   Darrin Shull, Officer Ryan Kram, Officer Thomas Dayton, Officer Matthew   Pickham, Officer Sam Toppel, Officer Anton Frazier, Medical Technician Jennifer   Tinsley, Medical Technician Krisi Eshleman, Marvin Reed, Guy Pierce, and Unknown Illinois Department of Corrections Employees, awarding compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and appropriate.

Answer:   Defendants deny that Plaintiff is entitled to judgment or to any of the relief she seeks.

## Affirmative Defenses

### A.      Qualified Immunity

At all times relevant to Plaintiff's claims, the Defendants acted in good faith in the performance of their official duties without violating clearly established constitutional rights. Defendants are protected from liability by the doctrine of qualified immunity.

### B.      State-Law Sovereign Immunity

Here, Defendants were acting within the scope of their employment, which, if established, means that the tort claims against Defendants are barred by the immunity provided in the State Lawsuit Immunity Act.   The State Lawsuit Immunity Act, 745 ILCS 5/1 *et seq.*, provides for sovereign immunity in Illinois and prevents suits against the State or its employees except as provided by the Court of Claims Act, 705 ILCS 505/8.   The Court of Claims is the exclusive forum for resolving lawsuits against the State of Illinois or employees acting within the scope of their employment for certain actions, including tort actions.   705 ILCS 505/8(d).

### C.      Statute of Limitations

Marvin Reed did not work at Pontiac Correctional Center for the times relevant to this suit. Because Reed had no involvement at the prison for more than two years prior to the death of Terrance Jenkins and no tolling applies, the claims brought against him are barred by the statute of limitations.

## Jury Demand

Defendants demand trial by jury.

WHEREFORE, Defendants respectfully request that this Court enter judgment in their favor and deny all relief sought by Plaintiff.

Respectfully submitted,

JAMES BOLAND, CHRISTOPHER BUFFORD, ADAM DEAL, RANDY PFISTER, and MARVIN REED,

Defendants,

Lisa Cook, #6298233
Assistant Attorney General
500 South Second Street
Springfield, Illinois   62701
(217) 557-7081 Phone
(217) 524-5091 Fax
Email: lcook@atg.state.il.us

LISA MADIGAN, Illinois Attorney General,

Attorney for Defendants,

By:   s/Lisa Cook
LISA COOK
Assistant Attorney General

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| PHYLLIS ELLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 117-1254 |
| | ) | |
| RANDY PFISTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2017, the foregoing document, ANSWER AND AFFIRMATIVE DEFENSES DIRECTED TO PLAINTIFF'S AMENDED COMPLAINT, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

| | |
|---|---|
| Arthur Loevy | loevylaw@loevy.com |
| Jonathan Loevy | jon@loevy.com |
| Katherine Roche | katie@loevy.com |
| Russell Ainsworth | russell@loevy.com |
| Sarah Grady | sarah@loevy.com |

Respectfully Submitted,

  s/Lisa Cook
Lisa Cook, #6298233
Assistant Attorney General
Attorney for Defendant
500 South Second Street
Springfield, Illinois   62701
(217) 557-7081 Phone
(217) 524-5091 Fax
E-Mail:  lcook@atg.state.il.us